STATE OF MAINE                 SUPERIOR COURT
KENNEBEC,                    AUGUSTA

| | | |
|---|---|---|
| JESSICA L. FAGRE, as the Personal Representative of the Estate of AMBROSHIA E. FAGRE<br><br>Plaintiff, | ) ) ) ) ) | NO. CV- 19- 26 |
| v. | ) ) | |
| SCOTT W. IRELAND, in his individual capacity; JEFFREY PARKS, in his individual capacity; MARK BROWN, in his individual capacity; | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

1.      The Plaintiff, Jessica L. Fagre on behalf of Ambroshia E. Fagre, bring this civil rights and wrongful death action against the Defendants, Scott Ireland, Jeffrey Parks, and Mark Brown, under 42 U.S.C. § 1983, 5 M.R.S.A. § 4682, and 18-A M.R.S.A. § 2-804, for the unlawful use of excessive and deadly force against Ambroshia E. Fagre, and failing to protect Ms. Fagre, on February 10, 2017 in Vassalboro, Maine in violation of the Fourth and

AUGUSTA COURTS
FEB 7 '19 AM 9:37

Fourteenth Amendments of the United States Constitution, and Article One Section 5 of the Maine Constitution, and Maine law, which caused conscious pain and suffering, and, ultimately, the death of Ambroshia E. Fagre.

## I.      PARTIES

2.      Jessica L. Fagre is the mother of Ambroshia E. Fagre, and personal representative of the estate of Ambroshia E. Fagre, as duly appointed by the Kennebec County Probate Court, and the rightful heir of Ambroshia E. Fagre under 18-A M.R.S.A. § 2-106.

3.      At all times relevant to this Complaint, Ambroshia E. Fagre was 18 years old, and a resident of Oakland, Maine.

4.      Scott W. Ireland was, at all times relevant to this Complaint, a Lieutenant with the Maine State Police, and acting under the color of law as a police officer for the State of Maine; Mr. Ireland is being sued in his individual capacity.

5.      Jeffrey Parks was, at all times relevant to this Complaint, a Trooper with the Maine State Police, and acting

under the color of law as a police officer for the State of Maine; Mr. Parks is being sued in his individual capacity.

6.     Mark Brown was, at all times relevant to this Complaint, the Chief of Police for Vassalboro, and acting under the color of law as a police officer for the town of Vassalboro; Mr. Brown is being sued in his individual capacity.

## II.     STATEMENT OF FACTS

7.     On February 10, 2017, Defendants Jeffrey Parks and Scott Ireland fire several shots into a vehicle that Ambroshia E. Fagre (hereafter "Amber") is a passenger in.

8.     One of the shots fired by Jeffrey Parks hits and kills Amber.

9.     On February 10, 2017, Scott Ireland is notified by a neighbor of a suspicious Dodge Durango parked in the neighbor's property in Vassalboro, Maine.

10.     Lieutenant Ireland puts on his Maine State Police jacket and gun belt to investigate the complaint of the suspicious vehicle.

11.     Lieutenant Ireland drives down the road to investigate in his Maine State Police vehicle.

12.     Lieutenant Ireland sees the Dodge Durango parked in a turnaround on the road.

13.     Lieutenant Ireland sees Amber sitting in the front passenger seat of the Durango; she is the only occupant of the vehicle at this time.

14.     Amber appears to Lieutenant Ireland to be slumped over and unconscious.

15.     Lieutenant Ireland approaches the Durango fearing Amber is suffering from carbon monoxide poisoning.

16.     Lieutenant Ireland pounds on the Durango passenger window to wake Amber.

17.     Lieutenant Ireland asks Amber to get out of the Durango, which she does.

18.     Lieutenant Ireland determines Amber is not suffering from carbon monoxide poisoning.

19.     Amber appears very lethargic and "out of it" to Lieutenant Ireland.

20.     Amber tells Lieutenant Ireland she is waiting for her boyfriend to come back.

21.     Amber gives Lieutenant Ireland several different names for her boyfriend, including Nick, Brian, and Hunter, and tells Lt. Ireland she does not know his last name.

22.     Lieutenant Ireland is joined by Sgt. Galen Estes of the Kennebec County Sheriff's Office, who is investigating a burglary in the area.

23.     Lieutenant Ireland sees footprints in the snow leading from the Durango to a nearby home.

24.     Lieutenant Ireland attempts to contact the homeowner above, but is unable to reach him.

25.     Lieutenant Ireland contacts a relative of the homeowner and asks him to check on the owner.

26.     Lieutenant Ireland learns from the relative that the homeowner has been tied up at gunpoint and the house ransacked.

27.     Lieutenant Ireland goes to the home to investigate further.

28.     Lieutenant Ireland asks Sgt. Estes to stay with Amber at the Durango.

29.     After Lt. Ireland leaves the Durango, Chief Mark Brown arrives at the Durango.

30.     Chief Brown learns there are drugs inside the Durango and two rings inside the pocket of Amber's sweatshirt that her boyfriend asked her to hold.

31.     Sgt. Estes eventually leaves the area and Chief Brown remains with Amber at the Durango.

32.     In investigating the home invasion, Lt. Ireland learns a man (later identified as Kadhar Bailey) knocked on the home owner's door, offered to shovel the driveway for a fee and then left; soon after, the home owner heard a noise in the garage and

when he checked on it, Mr. Bailey held the homeowner at gunpoint and tied him up inside the basement of the home, and then ransacked the home.

33. Lt. Ireland learns that Mr. Bailey stole the homeowner's pick up truck and left the home in the truck.

34. Chief Brown checks the area, and finds the homeowner's truck parked on a snowmobile trail.

35. Lt. Ireland notices footprints leading from the truck to the area where the Dodge Durango is parked.

36. Lt. Ireland notifies via radio Chief Brown with the above information regarding the home invasion and the footprints leading to the area of the Durango, and notifies Chief Brown that Mr. Bailey is heading toward his area and was armed.

37. Amber is with Chief Brown when he receives the above information from Lt. Ireland.

38. Chief Brown takes no steps to place Amber in a secure and safe location.

39.     Chief Brown could have placed Amber inside his cruiser to protect her from the armed and dangerous person in the area, but took no steps to do that.

40.     Chief Brown sees Mr. Bailey approaching the area with a handgun.

41.     Chief Brown draws his firearm and orders Mr. Bailey to stop.

42.     Mr. Bailey continues to approach Chief Brown and Amber, who was in the passenger seat of the Durango.

43.     Chief Brown is standing next to the passenger side door of the Durango at this time and is aware that Amber is seated in the passenger seat.

44.     Chief Brown takes cover on the drive side hood of the Durango.

45.     Chief Brown fires his gun at Mr. Bailey and then takes cover in a nearby snowbank.

46.     Chief Brown leaves Amber alone in the Durango knowing Mr. Bailey is approaching the vehicle armed and dangerous.

47.     Mr. Bailey fires his gun at Chief Brown.

48.     Mr. Bailey gets into the Durango.

49.     Mr. Bailey sits in the driver seat and begins to drive the Durango.

50.     Chief Brown fires another shot at Mr. Bailey as he is driving the Durango.

51.     Trooper Parks arrives on the scene at the time the first gunshots are being fired.

52.     Trooper Parks stops his police cruiser in the road when he hears the shots.

53.     Lt. Ireland is approaching the Durango on foot when he hears the gunshots.

54.     Trooper Parks gets out of his cruiser to seek cover.

55.     Mr. Bailey drives the Durango down the road towards Trooper Parks' now unoccupied cruiser.

56.     Trooper Parks moves behind his cruiser.

57.     As the Durango approaches the cruiser, Trooper Parks moves off the roadway behind a snowbank.

58.     Trooper Parks fires several rounds into the Durango.

59.     At the time Trooper Parks fires shots into the Durango, he can see, or reasonably should have taken notice, that Mr. Bailey is driving the vehicle and Amber is sitting in the passenger seat.

60.     At the time Trooper Parks fires shots into the Durango he had previously received information from dispatch, or one or more police officers, that a young woman is inside the passenger seat of the Durango.

61.     At the time Trooper Parks fires shots into the Durango, he had safely retreated off the roadway and is not in danger of being hit by the Durango.

62.     At the time Trooper Parks fires shots into the Durango, he is aware the road the Durango is traveling on is a remote road with little or no civilian traffic.

63.     At the time Trooper Parks fires shots into the Durango, he is aware there were other nonlethal measures that could be taken to stop the Durango from leaving the remote road.

64.     At the time Trooper Parks fires shots into the Durango, he is aware his police cruiser is parked in the roadway preventing the Durango from fleeing on the roadway.

65.     The Durango strikes Trooper Parks' cruiser.

66.     One of the shots fired by Trooper Parks hits Amber inside the passenger seat of the Durango.

67.     After the Durango strikes the cruiser it comes to a stop.

68.     Lt. Ireland approaches the driver side of the Durango armed with a patrol rifle.

69.     Lt. Ireland sees Mr. Bailey reach for something in the Durango.

70.     Lt. Ireland fires a shot at Mr. Bailey, that strikes and kills him.

71.     Amber is seriously injured by the gunshot wound that struck her from Trooper Parks' handgun.

72.     Amber is conscious after being shot and is aware she has been shot.

73.     Amber is taken to the hospital where she subsequently dies as a result of the gunshot injury.

III.     CLAIMS FOR RELIEF

*Count One*
**Excessive Force, Pursuant to 42 U.S.C. § 1983, Fourth Amendment of United States Constitution as to Defendants Parks, Ireland, and Brown**

74.     The Plaintiff incorporates all previously alleged paragraphs as if alleged herein.

75.     The above named Defendants violated Ambroshia E. Fagre's right under the Fourth Amendment of the United States Constitution to be free from the use of excessive and unreasonable force.

76.     Trooper Parks shot and killed Amber without legal cause or excuse.

77.     Trooper Parks knew, or reasonably should have known, Amber was not an imminent threat to himself or any other police officer, or person, present at the scene at the time Trooper Parks fired shots into the Durango.

78.     Trooper Parks had safely retreated out of the roadway and was not in the path of the oncoming Durango at the time he chose to fire shots into the Durango.

79.     Trooper Parks knew, or should have known, Amber was a passenger inside the Durango at the time he fired shots into the Durango.

80.     Defendants Ireland and Brown assisted Trooper Parks in the use of deadly force against Amber without legal cause or excuse.

81.     Defendants Ireland and Brown encouraged and supported Parks' decision to use deadly force against Amber by deploying deadly force themselves.

82.    Defendants Ireland and Brown knew Amber was a passenger inside the Durango at the time they deployed deadly force, and at the time Trooper Parks deployed deadly force.

83.    Defendants Ireland and Brown were aware that Amber was not an imminent threat to anyone at the time they deployed force and at the time Trooper Parks deployed deadly force.

84.    Defendants Ireland and Brown took no actions or steps to prevent Trooper Parks from deploying deadly force against Amber.

85.    As a result of Defendants actions and omissions deadly force was used against Amber.

86.    Amber suffered the following damages:

(a) Violation of his rights under the Fourth Amendment of the United States Constitution to be free from the use of unreasonable and excessive force.

(b) Loss of her life.

(c) Physical pain and suffering and emotional trauma and
suffering.

(d) Conscious pain and suffering and fear.

(e) Medical and funeral expenses.

(f) Loss of future earnings and wages.

### Count Two
### Excessive Force, Pursuant to 5. M.R.S. § 4682 and Article 1 § 5 of the State of Maine Constitution as to Defendants Parks, Ireland and Brown.

87.    The Plaintiff incorporates all previously alleged
paragraphs as if alleged herein.

88.    The above named Defendant's violated Ambroshia E.
Fagre's right under the Article 1 § 5 of the State of Maine
Constitution to be free from the use of excessive and unreasonable
force.

89.    As a result of the above violation Amber suffered the
damages set forth in Paragraph #86 above.

*Count Three*
**Failure to Provide Police Protection Against Defendants Ireland,
Parks, and Brown under the 14th Amendment of the United
States Constitution.**

90.     The Plaintiff incorporates all previously alleged paragraphs as if alleged herein.

91.     Defendants Ireland and Brown affirmatively acted to increase the threat which existed to Amber beyond that which otherwise existed including, but not limited to, failing to remove Amber from the Durango and placing her in a position of safety after learning an armed and dangerous suspect was in the area returning to her location, by failing to remove Amber from the Durango and placing her in a position of safety after observing she was suffering from a medical or mental health condition and could not care for herself, by leaving Amber alone inside the Durango knowing an armed and dangerous suspect with approaching the Durango, and by firing shots into the Durango knowing Amber was a passenger inside the vehicle.

92.     The above named Defendants' actions and omissions created a reasonably foreseeable danger to Amber and caused her death.

93.     The actions of Defendants in their failure to protect Amber created and elevated the threat of harm to Amber and "shocks the conscience" in violation of the 14th Amendment of the United States Constitution.

94.     The Defendants' failure(s) to protect Amber in light of the foregoing represents a constitutional violation of Plaintiffs' civil rights.

95.     As a result of the above violation Amber suffered the damages set forth in Paragraph #86 above.

## *Count Four*
## Negligence Against Defendants Ireland, Parks, and Brown

96.     The Plaintiff incorporates all previously alleged paragraphs as if alleged herein.

97.     The Plaintiff provided Notice Under Maine Tort Claims Act 14 M.R.S.A. § 8107 to the named Defendants on July 27, 2017 of the negligence claims set forth below.

98.     As police officers the Defendants owed Amber a special duty of care to protect her from harm.

99.     The above named Defendants acted unreasonably in deploying deadly force against Amber.

100.    The Defendants disregarded the risk to Amber in firing several shots into the Durango that they knew or reasonably should have known she was a passenger in.

101.    The Defendants acted unreasonably in failing to remove Amber from the Durango and place her in a position of safety as forth in the previous Count.

102.    The Defendants' actions directly caused the death of Amber.

103.    As a result of the above negligence, Amber suffered the damages set forth in Paragraph #86 above.

*Count Five*
**Wrongful Death, Pursuant to 18-A M.R.S.A. § 2-804 as to Defendants Parks, Brown, and Ireland.**

104.   The Plaintiff incorporates all previously alleged paragraphs as if alleged herein.

105.   The Plaintiff provided Notice Under Maine Tort Claims Act 14 M.R.S.A. § 8107 to the named Defendants on July 27, 2017 of the wrongful death claims set forth below.

106.   The above named Defendants' violation of Ambroshia E. Fagre's rights under federal and state constitutional law, and Maine law, as set forth in the previous paragraphs directly caused her death.

107.   As a result of Amber's death, the Plaintiff seeks damages as set forth and provided under Maine's Wrongful Death Statute, 18-A M.R.S.A. § 2-804(b).

*Count Six*

**Wrongful Death – Conscious Pain and Suffering  Pursuant to 18-A M.R.S.A. § 2-804 as to Defendants Ireland, Parks, and Brown.**

108.   The Plaintiff incorporates all previously alleged paragraphs as if alleged herein.

109.   Ambroshia E. Fagre suffered a period of conscious pain and suffering after being shot by Trooper Parks, and before her death.

110.   The Plaintiff seeks damages as set forth and provided under Maine's Wrongful Death Statute, 18-A M.R.S.A. § 2-804(c).

**V.   REQUEST FOR RELIEF**

111.   As a result of the above claims for relief, the Plaintiff requests the following relief:

i. Compensatory damages;

ii. Punitive damages;

iii. Attorney fees and cost pursuant to 42 U.S.C. § 1988, and 5 M.R.S. § 4683;

iv. damages as provided for under 18-A M.R.S.A. §

2-804;

v. and all other monetary and equitable relief the

Court finds appropriate.

Dated: February 6, 2019

The Plaintiff,

Hunter J. Tzovarras
Bar No. 004429
Attorney for Plaintiffs
32 Central Street
P.O.Box 2806
Bangor, Maine 04402
(207) 558-2450
hunter@bangorlegal.com