UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| JESSICA L. FAGRE, as the Personal Representative of the Estate of AMBROSHIA E. FAGRE | ) ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) ) | Docket No. |
| SCOTT IRELAND, JEFFREY PARKS, and MARK BROWN | ) ) ) ) | |
| Defendants | ) ) | |

**DEFENDANT MARK BROWN'S MOTION TO DISMISS
WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Mark Brown moves to dismiss all counts of Plaintiff's complaint against him.  The crux of Plaintiff's Complaint against Mark Brown, the Chief of Police of the Vassalboro Police Department, is that he violated the decedent's constitutional and state law rights by failing to protect her during a police shootout. For the reasons set forth below, Plaintiff's Complaint fails to plead facts that give rise to constitutional claims. At the very least, Chief Brown is entitled to qualified immunity. Plaintiff's state law negligence claims fail because Chief Brown is entitled to immunity under the Maine Tort Claims Act.

**FACTUAL BACKGROUND[1]**

This case arises out of the death of Plaintiff's decedent Ambroshia (Amber) Fagre on February 10, 2017.  Ms. Fagre was accidentally struck by a bullet fired by Maine State Trooper Jeffrey Parks during an armed confrontation between three law enforcement officers and Ms.

---

[1] The facts alleged in the Complaint are accepted as true only for the purpose of this Motion to Dismiss.

Fagre's boyfriend, Kadhar Bailey.  On that date, MSP Lt. Ireland was investigating the report of a suspicious vehicle parked in front of a neighbor's property.  Complaint ¶ 9.  Lt. Ireland finds a Dodge Durango parked in a turnaround on the road, with Ms. Fagre apparently asleep in the front passenger seat.  *Id*. ¶¶ 10-14.  Lt. Ireland pounds on the passenger window to wake her and has her get out of the car.  *Id*. ¶¶ 16-17.  Ms. Fagre tells Lt. Ireland she is waiting for her boyfriend to return to the car.  *Id*. ¶ 20.  Ms. Fagre gives Lt. Ireland several different names for her boyfriend. *Id*. ¶ 21.  Kennebec County Sherriff's Office Sgt. Galen Estes joins Lt. Ireland at the scene, advising that he is investigating a burglary in the area.  *Id*. ¶ 22.  Lt. Ireland sees footprints leading from the Durango toward a nearby home.  *Id.* ¶ 23.  After speaking on the phone to a relative of the owner of the home, Lt. Ireland learns that the homeowner was tied up at gunpoint inside the house and the house was ransacked.  *Id.* ¶¶ 24-26.

Lt. Ireland goes to the home to investigate further, asking Sgt. Estes to stay with Ms. Fagre and the Durango.  *Id*. ¶¶ 27-28.  After Lt. Ireland leaves, Chief Brown arrives at the Durango and learns there are drugs inside the car and that Ms. Fagre has two rings that her boyfriend asked her to hold.  *Id.* ¶¶ 29-30.  Sgt. Estes leaves the scene while Chief Brown stays with Ms. Fagre and the Durango.  *Id*. ¶ 31.  At the nearby home, Lt. Ireland learns that a man, later identified as Kadhar Bailey, held the homeowner at gunpoint and tied him up before ransacking the house and fleeing in the homeowner's pickup truck.  *Id*. ¶¶ 32-33.

When the pickup truck is located, Lt. Ireland notices footprints leading from it, heading back toward the location of the Durango.  *Id*. ¶ 35.  Lt. Ireland calls on his radio to Chief Brown, who is still at the Durango with Ms. Fagre, telling him that Bailey is heading toward him and that he is armed.  *Id*. ¶¶ 36-37.  After receiving the call from Lt. Ireland, Chief Brown sees Bailey approaching him, armed with a handgun.  *Id*. ¶ 40.  Chief Brown draws his weapon and orders

Bailey to drop his gun, but Bailey ignores his command and continues to approach the passenger side of the Durango where Brown is standing. *Id*. ¶¶ 41-43.

Chief Brown is forced to seek cover on the driver's side of the Durango, and then he fires once at Bailey before taking cover behind a snowbank. *Id*. ¶¶ 44-45. Bailey fires his handgun at Chief Brown, before he gets into the driver's side of the Durango and begins to drive away. *Id*. ¶¶ 47-49. Chief Brown fires again at Bailey as he starts to drive the Durango. *Id*. ¶ 50.

Trooper Parks has arrived at the scene as the gunfire between Chief Brown and Bailey occur, and he parks his cruiser in the road before exiting it to seek cover. *Id*. ¶¶ 51-52 & 54. As Bailey drives the Durango down the road toward Trooper Parks' position, Trooper Parks moves from behind the cruiser and takes cover behind a snowbank. *Id*. ¶¶ 55-57. Trooper Parks fires at the Durango before Bailey crashes it into the cruiser. *Id*. ¶¶ 58 & 65. One of the shots fired by Trooper Parks fatally wounds Ms. Fagre. *Id*. ¶¶ 66, 71 & 73. Lt. Ireland approaches the Durango on foot, orders Bailey to show his hands, and fatally shoots him when Bailey ignores the command and instead reaches for something inside the car. *Id*. ¶¶ 68-70.

As alleged in the Complaint, the bullet that struck Ms. Fagre was fired by Trooper Parks as Bailey drove the Durango, with Ms. Fagre in the passenger seat. Before that occurred, Bailey had exchanged gunfire with Chief Brown, and then drove away from Chief Brown's position, and down the road toward Trooper Parks' position. As alleged in the Complaint, Chief Brown had fired his pistol at Bailey, both before and after Bailey had fired at him. *Id*. ¶¶ 45, 47 & 50. There is no allegation in the Complaint that Chief Brown ever fired at Ms. Fagre, nor is there any claim that she was struck with any of the bullets he fired at Bailey. It is also alleged that the fatal round fired by Trooper Parks occurred after Bailey left Chief Brown's position and drove down the road until he reached Trooper Park's position.

3

## ARGUMENT

### I.   PLAINTIFF HAS FAILED TO PLEAD A COGNIZABLE FOURTH AMENDMENT EXCESSIVE FORCE CLAIM AGAINST CHIEF BROWN

In Count One of Plaintiff's Complaint, she alleges the use of excessive force by each Defendant, in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983.  In Count Two, Plaintiff makes the same claim under the Maine Constitution and Maine Civil Rights Act. Because the MCRA was patterned after § 1983, the result in the § 1983 claim will mandate that same result in the MCRA claim. *See, e.g., Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007); *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178-79 (1st Cir. 2008).  Plaintiff makes no distinction among the three Defendants regarding the claim that they used excessive force against Ms. Fagre, despite the fact that each officer used deadly force at a different time, in response to different threatened, or actual, uses of force against them by Bailey, and in different locations.  Defendant Brown contends that the use of force by each officer must be viewed separately, and in context, in this series of events. Chief Brown's claimed liability for his own use of force, as opposed to his alleged liability for Trooper Parks' use of force, appears to be limited to the allegations of ¶¶ 82-83 of the Complaint.

A law enforcement officer is entitled to use deadly force when "a suspect poses an immediate threat to police officers or civilians."  *McKenney v. Mangino*, 873 F.3d 75, 81 (1st Cir.2017), quoting *Jarrett v. Town of Yarmouth*, 331 F.3d 140, 149 (1st Cir. 2003) (per curiam). When feasible, a warning must be given first.  *McKenney* at 82, citing *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4 (1st Cir. 2005). Clearly, Bailey posed such an immediate threat to Chief Brown as he approached with a gun in his hand, while refusing orders to put it down (the warning).  That threatened use of deadly force by Bailey led to Chief Brown's first use of deadly force against Bailey.  After Bailey fired at

4

Chief Brown, as Chief Brown tried to find cover, Chief Brown fired again at Bailey in direct response to Bailey's actual use of deadly force against him.  At this time, Bailey was in the Durango with Ms. Fagre in the passenger seat, and this is alleged to be a use of force against her by Chief Brown.  Based on the allegations of the Complaint, Chief Brown's use of deadly force against Bailey clearly was not unreasonable under the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989)(the concept of "reasonableness" under the Fourth Amendment must take into account that police officers "are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary").  Defendant Brown is entitled to dismissal of Counts One and Two of the Complaint, as the allegations of the Complaint demonstrate the reasonableness of his decision to use deadly force against Bailey, and that it was not a use of force against Ms. Fagre.

Even if the Complaint is read to satisfactorily articulate a plausible claim that Chief Brown used unreasonable force against Bailey/Fagre, under the alleged facts of this case he would still be entitled to qualified immunity.  Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A police officer's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, for a law to be considered clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft*, 563 U.S. at 741.

5

The Supreme Court has repeatedly told courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). The qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and quotations omitted). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (citations and quotations omitted).

Here, the relevant inquiry is whether Ms. Fagre's Fourth Amendment rights were so clearly established under the alleged facts that it would be clear to every police officer in Chief Brown's position that using deadly force by shooting at Bailey in his vehicle would violate Ms. Fagre's rights as a passenger in the vehicle. Based on Supreme Court precedent and our own First Circuit precedent, the answer must be no. There is no First Circuit case that would serve to place Chief Brown on notice that employing deadly force against Bailey under the alleged facts of this case would violate Ms. Fagre's constitutional rights. On the other hand, there is significant First Circuit authority supporting an officer's use of deadly force in such emergency situations as the one facing Chief Brown. *See, e.g. Estate of Bennett v. Wainwright*, 548 F.3d 155 (1st Cir. 2008); *Berube v. Conley*, 506 F.3d 79 (1st Cir. 2007); *Roy v. City of Lewiston*, 42 F.3d 691 (1st Cir. 1994). *See also Brosseau v. Haugen*, 543 U.S. 194, 200-01 (2004); *Mitchell v. Miller*, 790 F.3d 73, 78-79 (2015). An objectively reasonable officer would have to conclude that Chief Brown's use of deadly force to protect himself from an armed man who refused commands to drop his gun and then actually fired it at him, did not violate any clearly established rights of Ms. Fagre. Put otherwise, it would not have been apparent to every reasonable officer that firing at Bailey under the alleged factual situation would violate Ms. Fagre's Fourth Amendment

rights.  *See Londol-Rivera v. Cruz Cosme*, 906 F.2d 791 (1st Cir. 1990), discussed more fully

below, in which the court held that shooting at a fleeing driver does not implicate any Fourth

Amendment rights of a passenger.  For these reasons, Chief Brown is entitled to a dismissal of

Counts One and Two of Plaintiff's Complaint.

　　　　Plaintiff further attempts to hold Chief Brown liable for Trooper Parks' decision to

subsequently fire at the Durango as it drove down the road toward him, which resulted in Ms.

Fagre accidently being struck by a bullet that was obviously intended for Bailey.  Plaintiff

alleges that Chief Brown "assisted" Trooper Parks in using deadly force against Ms. Fagre, and

"encouraged" Parks' decision to use deadly force against Ms. Fagre by first using deadly force

himself.  Complaint at ¶¶ 80-81.  The theory that Chief Brown "assisted" Trooper Parks is

factually flawed because it ignores the fact that Trooper Parks used deadly force only after

Bailey drove away from where Chief Brown had taken cover, and had driven down the road to

Trooper Parks' location.  *See* Complaint at ¶¶ 47-55.  After exchanging gunfire with Chief

Brown, "Mr. Bailey drives the Durango down the road toward Trooper Parks' now unoccupied

cruiser."  *Id.* at ¶ 55. As to the theory that Chief Brown "encouraged" Trooper Parks to use

deadly force by using deadly force himself, that ignores the fact that Chief Brown had legitimate

and lawful reasons to use deadly force, as discussed above.  Under Plaintiff's theory, that lawful

use of force by Chief Brown would somehow make him legally liable for what Plaintiff contends

is a later, unlawful use of force by Trooper Parks, at a different location down the road, and in

response to an entirely different threat against Trooper Parks.

　　　　Additionally, the theory that shooting at Bailey in the car implicated his passenger's

Fourth Amendment rights is legally flawed.  In *Londol-Rivera v. Cruz Cosme*, 906 F.2d 791 (1st

Cir. 1990), the court held that an officer who fired at a suspect, only to accidentally shoot a

hostage he was holding, was not liable under the Fourth Amendment to the hostage.  "A police officer's deliberate decision to shoot at a car containing a robber and a hostage *for the purpose of stopping the robber's flight* does not result in the sort of willful detention of the hostage that the Fourth Amendment was designed to govern."  *Id*. at 795 (italics in original).  The *Londol-Rivera* court relied heavily on the U.S. Supreme Court's decision in *Brower v. County of Inyo*, 489 U.S. 593, 109 S. Ct. 1378 (1989).  "The Fourth Amendment, the Court concluded, 'addresses 'misuse of power' . . . not the accidental effects of otherwise lawful government conduct."  *Londol-Rivera* at 795, quoting *Brower* at 109 S. Ct. at 1381 (citations omitted in original).  Based on the reasoning in *Londol-Rivera* and *Brower*, Trooper Parks did not commit a Fourth Amendment violation when he fired at the car being driven at him by Bailey, to try to stop Bailey's flight, though he accidentally struck Ms. Fagre with one of his shots.  And, if Trooper Parks did not commit a Fourth Amendment violation, Chief Brown can't be legally liable for allegedly "assisting" or "encouraging" Trooper Parks' lawful actions.  Chief Brown did not use any force against Ms. Fagre that violated her Fourth Amendment rights, as he fired his gun only at Bailey, *see* Complaint at ¶¶ 45 & 50, and he did not strike Ms. Fagre with any of his shots, *see* Complaint at ¶ 66.  Even if he had struck Ms. Fagre with one of his shots, Chief Brown's use of deadly force was not intended against her and any Fourth Amendment claim against him would fail under *Londol-Rivera* and *Brower*.

The only way a police officer can by liable for the independent acts of another officer is by the imposition of so-called "bystander liability."  "Absent evidence of participation, concerted action, or at least culpable knowledge, one officer cannot be held jointly liable under section 1983 for another officer's alleged unconstitutional conduct."  *See Calvi v. Knox Cty.*, 470 F.3d 422, 429 (1st Cir. 2006).  Of course, there are circumstances when a police officer may be held

liable for the failure to prevent an alleged constitutional violation by another officer, even if he

or she does not personally participate. *See Gaudreault v. Municipality of Salem*, 923 F.2d 203,

207 n. 3 (1st Cir.1990).  For such liability to attach, however, an officer must be present at the

scene and fail to take reasonable steps to protect the victim from another officer's use of

excessive force, when he/she has a "realistic opportunity" to prevent it.   *Id.*, quoting *O'Neill v.

Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988).

    In conclusory fashion, Plaintiff alleges that Chief Brown "took no action or steps to

prevent Trooper Parks from deploying deadly force against Amber."  Complaint ¶ 84.   This

claim, however, fails to articulate that Chief Brown was present at the scene where Trooper Park

was located and using deadly force, or that Chief Brown had a realistic opportunity to stop

Trooper Park from shooting.  The Complaint alleges that Bailey "drove down the road" after his

exchange of gunfire with Chief Brown, leaving Chief Brown lying behind a snowbank where he

had sought cover. *Id*. ¶¶ 45, 47-49 & 55-58.  It wasn't until Bailey approached Trooper Park's

position "down the road" as he drove the Durango that Trooper Park made the decision to use

deadly force to try to stop Bailey.  *Id*. ¶¶ 45, 47-58. The conclusory statements claiming Chief

Brown is liable for either "assisting," "encouraging," or "taking no action or steps to stop"

Trooper Parks at some distance "down the road" from where Chief Brown was lying behind a

snowbank should be summarily dismissed.  *See LaChapelle v. Berkshire Life Ins. Co*., 142 F.3d

507, 508 (1st Cir. 1998) ("[W]e differentiate between well-pleaded facts, on the one hand, and

'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the

other hand; the former must be credited, but the latter can safely be ignored.") (quoting *Aulson v.

Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)).  Plaintiff's Complaint fails to make out a cognizable

theory of bystander liability that would hold Chief Brown liable for Trooper Parks' independent

decision to use deadly force in another location, and in response to a separate threat against him. *See Gaudreault v. Municipality of Salem*, 923 F.2d at 207 n. 3.

## II.     PLAINTIFF HAS FAILED TO STATE A SUBSTANTIVE DUE PROCESS CLAIM AGAINST CHIEF BROWN, OR AT THE VERY LEAST, HE IS ENTITLED TO QUALIFIED IMMUNITY

In Count Three, Plaintiff brings a claim for the violation of Ms. Fagre's substantive due process rights under the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment provides that: "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a substantive due process claim, a plaintiff must show a deprivation of a protected interest in life, liberty or property that was caused by government conduct. *Rivera v. Rhode Island*, 402 F.3d 27, 33–34 (1st Cir. 2005). Substantive due process claims "must be carefully scrutinized to determine if the alleged facts support the conclusion that the state has violated an individual's constitutional rights." *Id.* at 33 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

### A.  Plaintiff has Not Alleged that Chief Brown Caused a Deprivation within the Meaning of the Fourteenth Amendment or that His Actions were Conscience-Shocking

Plaintiff's substantive due process claim against Chief Brown should be dismissed because Plaintiff has failed to allege that his conduct caused the deprivation of a protected interest in life, as alleged in the Count Three. The First Circuit has explained that a plaintiff has to allege not only a deprivation of a protected right but also that the governmental conduct *caused* the deprivation of the right. *Morgan v. Town of Lexington, MA*, 823 F.3d 737, 742-43 (2016) (quoting *Rivera*, 402 F.3d at 34). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir. 2011) (quoting *SEC v. Tambone,* 597 F.3d 436, 442 (1st Cir. 2010)); *see also Iqbal,* 556 U.S. at 678 (a court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). As to Chief Brown, the Complaint only alleges the conclusory statement that "Defendants," in general, caused Ms. Fagre's death. Complaint ¶ 92. Plaintiff has not alleged any factual matter to support the requisite causation element as to Chief Brown. The Complaint alleges that Ms. Fagre died from the injuries she sustained as a result of one of the shots fired by Defendant Parks. *Id.* ¶ 66, 71-73. Plaintiff does not allege that Chief Brown used deadly force against Ms. Fagre, caused her any physical harm, or otherwise caused a deprivation within the meaning of the Fourteenth Amendment. As such, Plaintiff has failed to state an actionable substantive due process claim against Chief Brown.

Count Three also alleges that Chief Brown created and elevated the threat of harm to Ms. Fagre and failed to protect her and place her in a position of safety. Complaint ¶ 93. Plaintiff attempts to implicate a claim under the state create danger theory, but the allegations fall short. *See* Rivera, 402 F.3d at 32 ("[M]erely rendering a person more vulnerable to risk does not create a constitutional duty to protect."). The First Circuit has not foreclosed the possibility that a state-created danger theory could support a viable due process claim. *See Irish v. Maine*, 849 F.3d 521, 526 (1st Cir. 2017). However, in evaluating a creation of risk situation, the First Circuit has cautioned that "courts must be careful to distinguish between conventional torts and constitutional violations, as well as between state inaction and action." *See Soto v. Flores*, 103

F.3d 1056, 1064 (1st Cir. 1997).  In *Irish v. Maine*, the First Circuit reiterated that, to state a claim under the state created danger theory, the plaintiff must still meet the "further and onerous requirement" of alleging actions that "shock the conscience of the court." 849 F.3d 521, 526 (2017)(citations omitted).  Conscience-shocking behavior "means conduct that is truly outrageous, uncivilized, and intolerable." *Hasenfus v. LaJeunesse*, 175 F.3d 68, 72 (1st Cir. 1999). *See also J.R. v. Gloria*, 593 F.3d 73, 80 n.4 (1st Cir. 2010) ("This circuit has never found on the facts of a case that deliberately indifferent behavior was sufficiently conscience-shocking to violate a plaintiff's substantive due process rights."). This is a deliberately high standard to ensure that the Constitution does not become "a font of tort law." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 863, 118 S. Ct. 1708, 1725, 140 L. Ed. 2d 1043 (1998) (citations omitted).

The First Circuit has only found conduct to "shock the conscience" where state actors engage in extreme or intrusive physical conduct.  *See*, *e.g., Marrero-Rodriguez v. Municipality of San Juan*, 677 F.3d 497, 501–02 (1st Cir. 2012) (finding conduct of shooting a participant in the back during a training exercise resulting in the participant's death sufficiently shocking to the conscience). Plaintiff does not allege any conduct by Chief Brown that rises to the level of shocking the conscience. Essentially, Plaintiff alleges that Chief Brown should have removed Ms. Fagre from the Durango and placed her in a "position of safety." Given the circumstances Chief Brown was confronting – an armed man refusing orders to stop and then firing at him – Chief Brown's decision to take cover and return fire at Bailey does not rise to the level of conscience shocking. Conduct by a state actor will rise to the requisite level of shocking the conscience only when the act was both "intended to injure in some way" and "unjustifiable by any government interest." *Rivera*, 402 F.3d at 36 (quoting. *Lewis*, 523 U.S. at 847 n.8, 849). *See also Plumhoff v. Rickard*, 572 U.S. 765, 778, n.4, 134 S. Ct. 2012, 2022, 188 L. Ed. 2d 1056

(2014) (recognizing that "a passenger killed as a result of a police chase could recover under a substantive due process theory only if the officer had 'a purpose to cause harm unrelated to the legitimate object of arrest.') (quoting *Lewis*, 523 U.S. at 836).

Here, there is no allegation that Chief Brown acted with the intent to harm Ms. Fagre. Nor is there any allegation that Chief Brown actually harmed Ms. Fagre. Rather, the Complaint alleges that Chief Brown's conduct occurred while he was responding to a man approaching with a handgun who refused to stop. Chief Brown fired his gun at Bailey and Bailey still refused to stop. Bailey shot at Chief Brown and Chief Brown returned fire as Bailey drove away. The complaint also alleges that when Bailey initially approached the Durango, Chief Brown was the only officer with Ms. Fagre. *See* Complaint ¶¶ 37-40. It was the decisions of Bailey that escalated the situation and increased the threat to Ms. Fagre and Chief Brown. Bailey could have stopped as Chief Brown ordered him to do. Instead, Bailey, armed with a handgun, continued to approach Chief Brown. *Id.* ¶ 42.  Chief Brown's decision to try to protect his own life and try to prevent an armed suspect who had just shot at a police officer from fleeing constitutes a justifiable governmental interest given the risk to the officer, Ms. Fagre, and the public in general. Under the circumstances alleged, it cannot be said that Chief Brown actions were so outrageous as to shock the conscience. Therefore, the Complaint fails to state a claim under the Due Process Clause of the Fourteenth Amendment.

### B. Chief Brown is Entitled to Qualified Immunity Because it was Not Clearly Established that His Conduct Would Constitute a Violation of Ms. Fagre's Substantive Due Process Rights

Even assuming that Plaintiff had stated a violation of Ms. Fagre's substantive due process rights as to Chief Brown, he is entitled to qualified immunity. As noted above, Police officers are entitled to qualified immunity unless their conduct constitutes a violation that was "clearly

established" at the time of the officer's conduct. *Saucier v. Katz*, 533 U.S. 194, 201–06, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). For a right to be clearly established, the contours of the right must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 134 S. Ct. at 2023, 188 L. Ed. 2d 1056. "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect [ing] all but the plainly incompetent or those who knowingly violate the law.'" *Sheehan*, 135 S. Ct. 1765, 1774 (quoting *Ashcroft*, 563 U.S. at 743, 131 S. Ct. at 2085).

As of February 10, 2017, there was uncertainty in the law as to whether the state created danger was even a viable theory of liability in this Circuit. In a March 1, 2017 decision, *Irish v. Maine*, the First Circuit recognized that it had "discussed the *possible* existence of the state-created danger theory, [but] never found it applicable to any specific set of facts." 849 F.3d 521, 526 (1st Cir. 2017) (emphasis added). *See also Morgan v. Town of Lexington, MA*, 823 F.3d 737, 740 (1st Cir. 2016) (noting, as of May 23, 2016, that the First Circuit has "never squarely accepted such a theory" of an affirmative duty to protect.). The First Circuit permitted a substantive due process claim to proceed in *Irish* based on a failure to protect and creation of danger theory, but that case was decided *after* the conduct giving rise to Ms. Fagre's claim. And the alleged circumstances in Irish demonstrated that the officers had time to make deliberate decisions over the course of a few days in refusing to provide Irish with police protection after she repeatedly requested it and after she pleaded with them for protection after her former boyfriend set fire to her parent's residence. This is markedly different from the allegations here where Chief Brown learned that an armed man was approaching, was the only officer initially on the scene with Ms. Fagre when confronted by Bailey, who refused to stop and fired at Chief Brown. Even accepting all the allegations as true and drawing all reasonable inferences in favor

14

of Plaintiff, Chief Brown's decision to leave Ms. Fagre alone in the Durango was not a deliberate decision in an attempt to cause her harm, but rather a necessary response to being confronted by an armed suspect. *Cf. Coyne v. Cronin*, 386 F.3d 280, 288 (1st Cir. 2004) ("In situations where a substantive due process claim might lie but where government officials must act in haste, under pressure, and without an opportunity for reflection, even applications of deadly force by those officials cannot be conscience-shocking unless undertaken maliciously and sadistically for the very purpose of causing harm."); *Lewis*, 523 U.S. at 849, 118 S.Ct. 1708 ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process").

This case also does not fall squarely within the failure to protect and state created danger theory discussed in *Irish* and alluded to in *DeShaney v. Winnebago County*, 89 U.S. 189, 197, 109 S.Ct. 998 (1989). The state created danger theory is implicated when alleged deprivation of life is based on harm caused by a private individual in situations where state actors are alleged to have created or increased the danger to the plaintiff. In contrast, here, the ultimate harm, Ms. Fagre's death, was caused by another state actor, Defendant Parks. Therefore the body of case law discussing the contours of claims based on a state created danger is not entirely applicable and certainly did not provide any reasonable official in Chief Brown's shoes with notice that his actions were unconstitutional. Nor is there any clearly established law requiring an officer to take certain actions to protect a third party when faced with an armed man, who refused to stop, fires at the officer, then flees in a vehicle. The courts have wisely not imposed an affirmative constitutional duty upon officers to take certain actions in such exigent situations. As discussed above, the case law would have provided notice that it was *reasonable* for Chief Brown to use deadly force against Bailey when faced with the imminent threat Bailey posed to him. *See supra* pp. 5-6. Even assuming that the facts alleged stated a violation of substantive due process right,

15

because the law was not clearly established that Chief Brown's decisions violated Ms. Fagre's

substantive due process rights, he is entitled to qualified immunity.

III.    PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED
        BECAUSE CHIEF BROWN IS ENTITLED TO IMMUNITY UNDER THE
        MAINE TORT CLAIMS ACT

In Count Four of her Complaint, Plaintiff alleges a state law negligence claim on the part

of all Defendants for both acts of commission (firing at the Durango) and omission (failing to

move Ms. Fagre to another location).  Plaintiff's state tort claims are subject to the immunity

provisions of the Maine Tort Claims Act ("MTCA").  *See* 14 M.R.S.A. §§ 8101 *et seq*.  As

discussed below, whether based on negligent or intentional conduct, Chief Brown is entitled to

immunity under the MTCA and therefore Plaintiff's state tort claims must be dismissed.

### A.  Chief Brown is Entitled to Discretionary Function Immunity.

Under the MTCA, employees are entitled to personal immunity from civil liability for

"performing or failing to perform any discretionary function or duty . . . ."  14 M.R.S.A.

§8111(1)(C).  This is true "whether or not the discretion is abused; and whether or not any

statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary

function or duty is performed is valid."  *Id.*  This immunity arose "in recognition of the need of

preserving independence of action without deterrence or intimidation by the fear of personal

liability and vexatious suits."  *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 425 (Me.

1987) (quoting Restatement (Second) of Torts § 895D cmt. b (1979)).  In essence, "[t]ort liability

should not be imposed for conduct of a type for which the imposition of liability would

substantially impair the effective performance of a discretionary function."  *Id.*

In determining whether a governmental action constitutes a discretionary function, Maine

courts look to four factors:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Id.* at 426; *Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 19, 948 A.2d 1223, 1230.  The first, second, and fourth factors are used to determine whether an employee is "performing an official function or duty" or in other words, whether the action performed by the employee was within the employee's duties.  *Morgan v. Kooistra*, 2008 ME 26, ¶ 20, 941 A.2d 447, 454 (internal quotations omitted).  Discretionary immunity will apply unless the employee's conduct "clearly exceeded, as a matter of law, the scope of any discretion he could have possessed in his official capacity . . . ."  *Lyons v. City of Lewiston*, 666 A.2d 95, 101 (Me. 1995).

Using these factors, Maine courts have regularly held that governmental employees are entitled to discretionary function immunity where the "alleged negligent acts involved discretionary decisions that were integral to the accomplishment of a uniquely governmental policy or program."  *Tolliver*, 2008 ME 83, ¶ 20.  This would include actions taken by governmental employees in response to an emergency because those actions serve "the basic governmental objective of public safety."  *Norton v. Hall*, 2003 ME 118, ¶ 6, 834 A.2d 928, 931  Courts have construed § 8111(1)(C) to apply to claims of excessive force and other actions taken by law enforcement officers.  *See Roy v. Inhabitants of Lewiston*, 42 F.3d 691, 696 (1st Cir. 1994) (citing *Leach v. Betters*, 599 A.2d 424, 426 (Me. 1991); *Norton v. Hall*, 2003 ME 118, ¶ 9, 834 A.2d 928, 931; s*ee also Ducette v. City of Lewiston*, 1997 ME 157, ¶ 6, 679 A.2d 1292, 1294 (holding that an emergency dispatcher who failed to follow department guidelines related to

17

incoming calls was still entitled to discretionary-function immunity because her job required her to "exercise judgment in evaluating incoming calls and determining initially how those calls should be handled.").

Here, there can be no doubt that the actions of Chief Brown in dealing with this emergency situation were discretionary, and thus entitled to absolute immunity.  It is undisputed that Chief Brown had the legal status of a municipal employee under the MTCA. 14 M.R.S.A § 8102(1); *see* Complaint ¶ 6.  In addition, Chief Brown's actions were taken in furtherance of a basic governmental program – the municipality's law enforcement services – and, just as in *Norton v. Hall*, they served the uniquely governmental objective of public safety.  *Norton*, 2003 ME at ¶ 7.  Chief Brown was asked to stay with Ms. Fagre and the Durango because there were drugs in the car and she was in possession of two rings that she claimed her boyfriend had asked her to hold.  Complaint ¶¶ 30-31.  This occurred after she had initially been detained by Lt. Ireland and then Sgt. Estes.  Whether the officers decided to remove Ms. Fagre from the scene or have her remain there while they investigated the burglaries that had been reported near where she was found waiting for her boyfriend to return, they were exercising their discretion.  Chief Brown was forced to use deadly force to defend himself from the imminent threat against him posed by Bailey, who both threatened to use deadly force and actually used deadly force against Chief Brown.  The decisions Chief Brown made in how to respond in this situation required the exercise of his judgment, based on his experience and training as a police officer and his observations of Bailey's conduct and the attendant circumstances.  The MTCA and Law Court precedent have consistently protected government employees and agents with immunity for such decisions.  For the foregoing reasons, Chief Brown is entitled to discretionary function immunity pursuant to 14 M.R.S.A. § 8111(1)(C) on Plaintiff's state law tort claims.

## B.  Chief Brown is Entitled to Intentional Act Immunity

The MTCA also confers absolute immunity on governmental employees for intentional acts or omissions that arise in the course and scope of their employment.  14 M.R.S.A. § 8111(1)(E).  The only exception to the grant of immunity under Section 8111(1)(E) is for intentional acts performed in "bad faith."  *Id.*  It is undisputed that Chief Brown acted intentionally in using deadly force against Bailey, Complaint ¶¶ 45 & 50, but he did not use deadly force at all against Ms. Fagre.  The Complaint does not allege that the Defendants, including Chief Brown, acted in bad faith.  It only alleges that they acted "unreasonably" by deploying deadly force against Ms. Fagre and/or by not removing her from the Durango. Complaint ¶¶ 99-101.  As to any intentional acts alleged, if Chief Brown did not act in bad faith, then he entitled to immunity on Plaintiff's state law tort claims. Even if it had been alleged, the "bad faith" proviso of Section 8111(1)(E) is not implicated by the facts of this case.  *See  Trafton v. Devlin*, 43 F. Supp. 2d 56, 62 (D. Me. 1999) (finding bad faith where wardens took pleasure in fact that plaintiffs were forced to spend money on their criminal defense and wardens had failed to provide exculpatory evidence to prosecutors).  Chief Brown acted using split second judgment in the reasonable belief that Bailey, by brandishing a gun and then firing at him, posed an imminent and dangerous threat. As alleged, Chief Brown made the decision to fire in a matter of seconds as a matter of self-defense. Because there is no bad faith alleged, or implicated under the facts that are alleged, Chief Brown is entitled to intentional act immunity.

For the foregoing reasons, Chief Brown is entitled to the immunity afforded by the MTCA for his actions, whether alleged to be negligent or intentional.  *See* 14 M.R.S.A. § 8111(1)(C) & (E).  Accordingly, Plaintiff's state law negligence claims should be dismissed.

19

## IV.      DISMISSAL OF THE SUBSTANTIVE CAUSES OF ACTION REQUIRES DISMISSAL OF PLAINTIFF'S WRONGFUL DEATH ACT CLAIM

Count Five of Plaintiff's Complaint asserts a recovery under Maine's Wrongful Death Act.  *See* 18-A M.R.S.A. § 2-804. But any claim under this statute requires that the death of a person is caused by "a wrongful act, neglect, or default," which "would, if death had not ensued, have entitled the party injured to maintain an action and recover damages . . . ."  *See* 2-804(a). For the reasons and the law cited above, however, Ms. Fagre would not have been able to maintain any of her alleged causes of action against Chief Brown under the facts as alleged in the Complaint.  Dismissal of the substantive causes of action found at Counts One through Four of the Complaint requires dismissal of Count Five as well.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should dismiss Plaintiff's Complaint against Defendant Mark Brown in its entirety.

 Dated at Portland, Maine this 22nd day of February 2019.

*/s/ Edward R. Benjamin, Jr.*
Edward R. Benjamin, Jr., Esq.

*/s/ Kasia S. Park*
Kasia S. Park, Esq.

Drummond Woodsum & MacMahon
84 Marginal Way, Suite 600
Portland, ME
(207) 772-1941
ebenjamin@dwmlaw.com
kpark@dwmlaw.com
*Attorneys for Defendant Mark Brown*

## CERTIFICATE OF SERVICE

I, Edward R. Benjamin, Jr., hereby certify that on February 22, 2019, I electronically filed the foregoing Defendant Mark Brown's Motion to Dismiss with the Clerk of Court via e-mail at newcases.portland@med.uscourts.gov.  I also certify that I made service of the foregoing, by depositing a true copy of same, on this date, in the U.S. Mail, postage prepaid to:

Hunter J. Tzovarras, Esq.
Law Office of Hunter J. Tzovarras
111 Columbia Street
P.O. Box 2806
Bangor, ME  04402

Jonathan Bolton
Assistant Attorney General
Office of the Attorney General
Litigation Division
6 State House Station
Augusta, ME  04333-0006

*/s/Edward R. Benjamin, Jr.*
Attorney for Defendant Mark Brown