**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| JESSICA L. FAGRE, as the Personal Representative of the Estate of AMBROSHIA E. FAGRE, <br><br>      Plaintiff, <br><br>      v. <br><br>SCOTT W. IRELAND et al. <br><br>      Defendants. | Docket No.: 1:19-cv-00083-LEW |

**MOTION TO DISMISS ALL CLAIMS AGAINST**
**SCOTT IRELAND AND JEFFREY PARKS**

Defendants Scott W. Ireland and Jeffrey Parks respectfully move for dismissal of all claims against them under Fed. R. Civ. P. 12(b)(6).[1]

**Memorandum of Law**

According to the complaint, the plaintiff estate's decedent, Ambroshia Fagre, was a passenger in a vehicle driven by an "armed and dangerous" criminal fleeing the scene of a gunfight with police. Defendant Jeffrey Parks, a state trooper, tried to stop the fleeing vehicle by firing into it as it rammed Parks's just-vacated cruiser. Ms. Fagre was hit by a bullet and killed.

Those allegations—at most—state a negligence claim, for which Trooper Parks has discretionary-function immunity under the Maine Tort Claims Act. They do not state a claim under the Fourth or Fourteenth Amendments. It has been long established in this Circuit that an officer does not violate the Fourth Amendment by unintentionally harming a passenger during an

---

[1]    Defendants Ireland and Parks also join the arguments made by Defendant Brown in his motion to dismiss (Docket #4), to the extent those arguments demonstrate or imply that the claims against them should also be dismissed.

attempt to seize the driver of a fleeing vehicle.  That is what is alleged here.  Moreover, a Fourteenth Amendment substantive-due-process claim in the sort of tense, rapidly evolving circumstances alleged here requires an extreme level of intentional, conscience-shocking misconduct.  Nothing like that can be plausibly inferred from the allegations in the complaint.

The allegations against the other Maine State Police defendant, Lt. Scott Ireland, also fail to state a claim.  Lt. Ireland is not alleged to have used any force at all against Ms. Fagre.  Indeed, accepting as true the complaint's non-conclusory allegations, it is hard to see what Lt. Ireland supposedly did wrong.  In essence, the complaint alleges that Lt. Ireland encountered Ms. Fagre waiting for her boyfriend under circumstances suggesting the boyfriend was robbing nearby homes, that he left Ms. Fagre with another officer so he could investigate further, and that, once he determined that the boyfriend might be headed back toward Ms. Fagre, he radioed a warning to the officer who was with her.  That is it.  Those facts do not even hint at a Fourth-Amendment seizure.  Nor do they allow a plausible inference of conscience-shocking behavior actionable under the Fourteenth Amendment.  Quite the contrary; the allegations show that Lt. Ireland took affirmative steps to *protect* Ms. Fagre even as he was simultaneously attempting to address a potential threat to nearby residents from Ms. Fagre's apparent boyfriend.

In short, given the legal standards applicable to Plaintiff's federal claims, the alleged facts fall well short of what is required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  As in that case, Plaintiff's facts may be consistent with the "sheer possibility" that Defendants acted unlawfully, *id.* at 678, but do not permit a plausible inference that unlawful conduct actually occurred.  If nothing else, they fail to show the violation of clearly established law necessary to overcome Defendants' qualified immunity.  The claims should be dismissed.

The state-law claims should also be dismissed.  The Maine Civil Rights Act claims are analyzed under the same standard as the federal § 1983 claims and should be dismissed for the same reasons.  And the negligence claims are barred by Defendants' immunities under the Maine Tort Claims Act and because the complaint does not allege any affirmative act by Lt. Ireland to expose Ms. Fagre to the danger that ultimately caused her injury.

## Factual Allegations

The narrative below is from the complaint's factual allegations, which, for purposes of this motion, are assumed to be true to the extent they are well-pleaded and non-conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### Lt. Ireland Encounters Ms. Fagre

On February 10, 2017, Lt. Ireland's neighbor in Vassalboro told him that a suspicious Dodge Durango SUV was parked on the neighbor's property.  *Id.* ¶ 9.  Upon investigation, Lt. Ireland found Ms. Fagre alone in the passenger seat of the vehicle.  *Id.* ¶¶ 11–13.  She appeared to be slumped over and unconscious.  *Id.* ¶ 14.  According to the complaint, Lt. Ireland pounded on the window to get her attention and had her step out of the vehicle.  *Id.* ¶¶ 16–17.  Ms. Fagre explained to Lt. Ireland that she was "waiting for her boyfriend to come back."  *Id.* ¶ 20.  Lt. Ireland observed Ms. Fagre to be "very lethargic" and "out of it."  *Id.* ¶ 19.

### Lt. Ireland Leaves Ms. Fagre Under the Protection of Another Officer So He Can Investigate

While he was with Ms. Fagre, Lt. Ireland was joined by another officer, Sgt. Estes, who was investigating a burglary in the area.  *Id.*  Lt. Ireland noticed footprints in the snow from the Durango to a nearby home.  *Id.* ¶ 23.  After trying and failing to contact the homeowner, Lt. Ireland contacted a relative of the homeowner and learned that the homeowner had been tied up at gunpoint and his house ransacked.  *Id.* ¶ 26.

3

Lt. Ireland decided to go to the home to investigate. *Id.* ¶ 27. He asked Sgt. Estes to stay with Ms. Fagre, which Estes did until he was relieved by Vassalboro Police Chief Mark Brown, the third named defendant in this action. *Id.* ¶¶ 28, 29, 31.

In investigating the home, Lt. Ireland learned that a man later identified as Kadhar Bailey had held the resident at gunpoint, tied him up in the basement, and ransacked the home. *Id.* ¶ 32. Bailey then stole the homeowner's pickup truck and left. *Id.* ¶ 33.

The complaint alleges that Chief Brown then checked the area and found the stolen pickup truck parked on a snowmobile trail. *Id.* ¶ 34. Lt. Ireland went to investigate the truck, and noticed footprints leading from the truck back toward the Durango. *Id.* ¶ 35. Lt. Ireland then radioed Chief Brown warning him that Bailey was headed toward his area, was armed, and had robbed the homeowner at gunpoint. *Id.* ¶ 36. On his way back to the Durango, Lt. Ireland heard gunshots. *Id.* ¶ 53. By the time he approached the Durango, Ms. Fagre had already been shot. *Id.* ¶¶ 58, 68.

### Bailey and Chief Brown Exchange Gunfire

After hearing Lt. Ireland's radioed warning, Chief Brown spotted Bailey approaching with a handgun. *Id.* ¶ 40. Ms. Fagre was inside the Durango. *Id.* ¶ 42. After Bailey ignored a warning to stop, *id.* ¶ 41, Chief Brown took cover and fired at Bailey. *Id.* ¶ 45. Bailey returned fire. *Id.* ¶ 47. Bailey then got into the Durango and drove off with Ms. Fagre. *Id.* ¶ 49.

### Trooper Parks Attempts to Stop Bailey's Escape, Inadvertently Shooting Ms. Fagre in the Process

As Bailey and Chief Brown were shooting at each other, Trooper Parks was approaching the scene in his cruiser. *Id.* ¶¶ 51–52, 64. On hearing the gunfire, Parks stopped his cruiser—blocking the road—got out, and took cover behind the cruiser. *Id.* ¶¶ 52–56, 64. When Bailey drove toward Trooper Parks's cruiser, *id.* ¶ 55, Parks abandoned the cruiser and took cover

4

behind a snowbank, out of the Durango's path.  *Id.* ¶ 57.  Trooper Parks then fired several rounds into the Durango as it approached his cruiser.  *Id.* ¶ 58.  A single round hit Ms. Fagre.  *Id.* ¶ 66. The Durango then crashed into Trooper Parks's cruiser.  *Id.* ¶ 65.

The complaint alleges that, at the time he fired, Trooper Parks "[could] see, or reasonably should have taken notice" that Ms. Fagre was "sitting in the passenger seat."  *Id.* ¶ 59.  It also alleges that Trooper Parks had previously received information that Ms. Fagre was in the passenger seat.  *Id.* ¶ 60.  Nowhere does the complaint allege that Trooper Parks intended to shoot Ms. Fagre.  Rather, the complaint suggests that Trooper Parks's goal was to "stop the Durango from leaving the remote road."  *Id.* ¶ 63.

### Lt. Ireland Uses Deadly Force Against Bailey

After the crash, Lt. Ireland approached the driver side of the Durango.  *Id.*  As he approached he saw Bailey reach for something.  *Id.* ¶ 69.  Lt. Ireland then shot and killed Bailey. *Id.* ¶ 70.  There is no allegation that Lt. Ireland's use of force further injured Ms. Fagre.

Ms. Fagre was taken to the hospital and died as a result of the gunshot wound from Trooper Parks's bullet.  *Id.* ¶ 73.

### Plaintiff's Complaint

Based on these allegations, Plaintiff brings several federal and state claims against all three defendants.  She alleges that Trooper Parks's shooting of Ms. Fagre violated the Fourth Amendment and that Lt. Ireland also violated the Fourth Amendment by either assisting, encouraging, or failing to prevent Trooper Parks's action.  Compl., Ct. 1.  She also claims that Parks and Ireland violated the Fourteenth Amendment by failing to protect Ms. Fagre.  *Id.*, Ct. 3. Plaintiff also asserts state claims under Maine Civil Rights Act and for negligence.  *Id.*, Ct. 2, 4.

5

**Argument**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Rule 12(b)(6) analysis has two steps. First, the Court should "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court should determine whether "the well-pleaded facts, taken in their entirety, permit 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678). If the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed. *Iqbal*, 556 U.S. at 679. This analysis requires the court to draw upon "its judicial experience and common sense." *Id.*

## I.     THE COMPLAINT FAILS TO STATE A FOURTH AMENDMENT CLAIM

### A.   Trooper Parks Did Not Unreasonably Seize Ms. Fagre

The complaint fails to a state a Fourth Amendment claim because it does not allege facts showing that Ms. Fagre was "seized." The controlling case is *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791 (1st Cir. 1990). In that case, the defendant officers responded to a robbery in which the robber had taken a hostage. *Id.* at 791. The robber attempted to escape with the hostage by commandeering a passing car. *Id.* at 792. As the car started moving, three officers opened fire on the vehicle, missing the robber but hitting the hostage. *Id.* At least one shooter knew that a hostage was in the vehicle. *Id.* at 797. The hostage sued for excessive force. *Id.* at 792.

The First Circuit's analysis of whether the hostage was "seized" for Fourth Amendment purposes turned largely on *Brower v. County of Inyo*, 489 U.S. 593 (1989). In that case, the Court defined a seizure as "a governmental termination of freedom of movement *through means intentionally applied*." *Brower*, 489 U.S. at 597 (emphasis in original). The issue in *Landol-Rivera* was whether the defendant officers' decision to shoot into the car was an "intentionally applied" means of terminating the hostage's freedom of movement, with the plaintiff arguing that it was sufficient for the police to "*deliberately*" fire their weapons into the vehicle knowing that a hostage was inside. *Landol-Rivera*, 906 F.2d at 794 (emphasis in original).

The First Circuit disagreed. It rejected the plaintiff's theory that the intentionality requirement can be met "by the deliberateness with which a given action is taken." *Id.* at 795. Instead, relying on *Brower,* it drew a distinction between police action "directed toward" producing a particular result and action that only "causes" a particular result. *Id.* Only the former, reasoned the court, is properly understood as a seizure. *Id.* The court concluded: "[a] police officer's deliberate decision to shoot at a car containing a robber and a hostage *for the purpose of stopping the robber's flight* does not result in the sort of willful detention of the hostage that the Fourth Amendment was designed to govern." *Id.* at 796 (emphasis in original).

The facts alleged in the complaint are indistinguishable from those at issue in *Landol-Rivera*. As in *Landol-Rivera*, the allegations here involve an armed and dangerous criminal attempting to escape from police in a vehicle. Compl. ¶¶ 49, 91. As in *Landol-Rivera*, the vehicle also contained a passenger. *Id.* ¶ 59. In both cases, the defendant officer fired into the vehicle to stop the fleeing driver but hit the passenger instead. *Id.* ¶¶ 58, 63, 66. In neither case was it alleged that the officer intentionally shot the passenger. *Id.* ¶ 58; *Landol-Rivera*, 906 F.2d

at 795 n.7.  In short, Plaintiff here is asserting exactly the claim that *Landol-Rivera* declined to recognize.

Since *Landol-Riversa* was decided, a circuit split has developed on whether an officer can seize a passenger by inadvertently injuring her while trying to stop a fleeing driver.  *Plumhoff v. Rickard*, 572 U.S. 765, 778 n.4 (2014) (citing cases).  In 2014, the Supreme Court, in declining to resolve the split, recognized that the First Circuit, by virtue of *Landol-Rivera*, was on the side split that does not recognize inadvertent injuries to passengers as seizures.  *Id.*  The First Circuit has not since overruled *Landol-Rivera* or called it into question.  *See Stamps v. Town of Framingham*, 813 F.3d 27, 37 n.10 (1st Cir. 2016) (describing *Landol-Rivera's* holding and distinguishing it without suggesting it was no longer good law).  *Landol-Rivera* thus remains good law in this Circuit.[2]

Finally, even if *Landol-Rivera* is somehow inapplicable, the complaint still fails to allege a plausible Fourth Amendment violation because Trooper Parks's decision to use deadly force was not unreasonable under the emergent circumstances apparent from the complaint.  Deadly force against a fleeing suspect is reasonable under the Fourth Amendment where an officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others."  *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  Here, the complaint concedes

---

[2]        The Third Circuit, in a decision that ultimately ruled in favor of the defendant officers on qualified immunity grounds, has suggested that the Supreme Court's decision in *Brendlin v. California*, 551 U.S. 249 (2007), holding that a traffic stop seizes all occupants of a vehicle, suggests that the First Circuit may be on the wrong side of the circuit split.  *See Davenport v. Borough of Homestead*, 870 F.3d 273, 279 (3d Cir. 2017).  *Davenport* acknowledged, however, that a circuit split remains.  *Id.*  Moreover, at least one other circuit has expressed doubt that *Brendlin's* reasoning can be stretched beyond the context of traffic stops.  *Cooper v. Rutherford*, 503 Fed. App'x 672, 675 (11th Cir. 2012); *see also Carabajal v. City of Cheyenne*, 847 F.3d 1203 (10th Cir. 2017) (law on seizure of passengers by force not clearly established despite *Brendlin*).  Moreover, the Supreme Court's 2014 observation in *Plumhoff* of a continuing circuit split came seven years after *Brendlin*—suggesting that the Supreme Court itself does not regard *Brendlin* to have settled the question.  Under these circumstances, *Landol-Rivera* remains the controlling authority for this Court.

Bailey was "armed and dangerous," *id.* ¶ 91, and had already used deadly force against Chief Brown, *id.* ¶¶ 45–47.  The complaint also concedes that, just before Trooper Parks fired, he had to flee his cover behind his cruiser to avoid being run over by Bailey—who then crashed into the cruiser. *Id.* ¶ 57.[3]  *Id.* ¶ 65.  These facts establish that Bailey posed an immediate threat to Parks, to the other officers on the scene, and to nearby residents, one of whom Bailey had *already* assaulted by tying him up at gunpoint.  *Id.* ¶ 32.  Under these circumstances, deadly force was reasonable as a matter of law.

Because Trooper Parks did not seize Ms. Fagre, and because, even if he did, that seizure was reasonable to stop Bailey, the Fourth Amendment claim should be dismissed.

**B.    The Complaint Does Not State a Fourth Amendment Claim Against Lt. Ireland**

Lt. Ireland is not alleged to have injured Ms. Fagre directly.  Rather, the complaint alleges that Lt. Ireland violated the Fourth Amendment because he somehow "assisted" Trooper Parks in the use of deadly force, Compl. ¶ 80, "encouraged and supported Parks' decision to use deadly force by deploying deadly force [himself]," *id.* ¶ 81, and "took no actions or steps to prevent" Trooper Parks's use of force."  *Id.* ¶ 84.  Other than alleging that Lt. Ireland shot Bailey *after* Trooper Parks shot Ms. Fagre, the complaint offers no specifics to back up these assertions.

As an initial matter, all three of these legal theories are premised on the notion that Trooper Parks's use of force violated the Fourth Amendment.  Because, as argued in Part I.A, it did not, the Fourth Amendment claim against Lt. Ireland necessarily also fails.  *See Rivera v. Rhode Island*, 402 F.3d 27, 38 (1st Cir. 2005) (no supervisory liability or failure-to-train liability where there was no underlying constitutional violation).

---

[3] Given the fast-moving situation, the fact that Bailey was approaching Parks in a vehicle, and the fact that Bailey had already ignored a previous warning by Chief Brown, there can be no plausible inference that an additional warning was either necessary or feasible.

Moreover, even assuming arguendo that Trooper Parks violated the Fourth Amendment, the complaint still would not state a plausible Fourth Amendment claim against Lt. Ireland.  The complaint's cryptic allegation that Lt. Ireland somehow "assisted" Trooper Parks in using force, without more, is the sort of "mere conclusory statement[]" that need not be credited as true on a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  So too is the allegation that Lt. Ireland failed to take unspecified "actions or steps" to prevent Trooper Parks's use of force.  Indeed, the facts alleged in the complaint make it doubtful that Lt. Ireland was in any position to either assist Trooper Parks or to stop him, as Lt. Ireland was still on his way back to the scene when the gunfire started.  Compl. ¶ 53; *see Wilson v. Town of Mendon*, 294 F.3d 1, 14 (1st Cir. 2002) (no liability for failing to stop a use of force where defendant officer had no realistic opportunity to intercede).  And, finally, even assuming that an officer can violate the Fourth Amendment by using force in a manner that "encourag[es] and support[s]" another officer's decision to use force, Compl. ¶ 81, the complaint's own allegations negate the theory.  As a purely factual matter, Lt. Ireland's use of force could not have "encouraged" Trooper Parks's use of force because it came later in time.  *Id.* ¶¶ 66–70.

## II.    THE COMPLAINT FAILS TO ALLEGE THE EXTREME FACTS NECESSARY TO STATE A SUBSTANTIVE DUE PROCESS CLAIM

### A.    The Complaint Does Not Allege Facts Stating a Plausible Substantive Due Process Claim Against Trooper Parks

Any substantive due process claim against Trooper Parks fails as a matter of law.[4]  In such claims, the plaintiff must show that the alleged conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Coyne v. Cronin*, 386 F.3d

---

[4]      It is unclear whether the complaint even means to state such a claim against Trooper Parks.  Although the caption of Count III asserts the claim against all three defendants, the substance of the claim refers only to "Defendants Ireland and Brown."  Compl. ¶ 91.

280, 287 (1st Cir. 2004) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Where, as here, "government officials must act in haste, under pressures, and without an opportunity for reflection, even applications of deadly force by those officials cannot be conscience-shocking *unless undertaken maliciously and sadistically for the very purpose of causing harm*." *Coyne*, 386 F.3d at 287 (emphasis added). Applying this standard, the Supreme Court has held that an allegation that the defendant officer engaged a high-speed pursuit of a motorcycle in a way that was deliberately indifferent to the life of the passenger did not state a substantive-due-process claim. *County of Sacramento*, 523 U.S. at 855. While such conduct might "offend[] the reasonableness held up by tort law," it was not unconstitutional absent some reason to believe that it was "tainted by an improper or malicious motive." *Id.*

The facts alleged in the complaint make it indisputable that Trooper Parks was in a similar situation in which he had to act "in haste, under pressures, and without an opportunity for reflection." As he arrived at the scene, he could hear Bailey and Chief Brown shooting at each other. Compl. ¶ 52. He then had to flee his initial cover as Bailey drove towards it. *Id.* ¶ 57. Under these circumstances, as in *County of Sacramento*, Plaintiff would have to plead facts allowing a plausible inference that Trooper Parks acted "maliciously and sadistically" toward Ms. Fagre "for the very purpose of causing harm." *Coyne*, 386 F.3d at 287. No such facts appear in the complaint. Indeed, it cannot even manage to squarely allege that Trooper Parks saw Ms. Fagre before he fired, resorting instead to the negligence-based formulation that he *either* could see *or* "reasonably should have taken notice" that Ms. Fagre was in the vehicle. *Id.* ¶ 59.[5]

---

[5]   Alternatively, if the Court were to somehow conclude, contrary to the arguments set forth in Part I.A, *supra*, that Trooper Parks's inadvertent shooting of Ms. Fagre should be analyzed as a seizure, any substantive due process claim would automatically be barred. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding all excessive-force claims involving seizures must be analyzed exclusively under the Fourth Amendment); *see also County of Sacramento*, 523 U.S. at 844 (analyzing use-of-force claim under substantive due process because it did not involve a Fourth-Amendment seizure).

**B.    The Complaint Fails to Allege Facts Supporting a Substantive
Due Process Claim Against Lt. Ireland**

The substantive due process claim against Lt. Ireland also fails as a matter of law.
Indeed, the facts alleged in the complaint do not allow an inference that Lt. Ireland did anything
wrong at all, let alone engaged in conscience-shocking behavior.

The level of fault necessary to "shock the conscience" depends on the circumstances.
*Coyne*, 386 F.3d at 288.  Because the Constitution is not a "font of tort law," *id.* (quoting *Paul v.
Davis*, 424 U.S. 693, 701 (1976)), the minimum level of scienter is "deliberate indifference."  *Id.*
That standard may apply in non-urgent situations in which "actual deliberation on the part of a
governmental defendant is practical."  *Id.*; *see also Irish v. Maine*, 849 F.3d 521, 528 (1st Cir.
2017) (suggesting deliberate indifference standard applied to claim that police left a voicemail
message for suspect that provoked him to violence).  As circumstances become more urgent, the
level of scienter required to shock the conscience increases, culminating in the "actual malice"
standard discussed above.  *Coyne*, 386 F.3d at 288.

The facts in the complaint make clear that Lt. Ireland was acting in circumstances of
heightened urgency.  At the time he decided to leave Ms. Fagre with Sgt. Estes—the only action
he took prior to Ms. Fagre's injury to which the complaint appears to ascribe fault—Lt. Ireland
had reason to believe that Ms. Fagre's apparent boyfriend had tied up and robbed a nearby
homeowner at gunpoint.  Compl. ¶¶ 23, 26.  Given the nature of that information, urgent and
decisive action was required.  The situation was not like a decision about how to contact a
suspect about an interview, *Irish*, 849 F.3d at 526, or what tactics to use in an interrogation,
*McConkie v. Nichols*, 392 F. Supp. 2d 1, 11 (D. Me. 2005), or the planning of an undercover
raid, *Butera v. District of Columbia*, 235 F3d 637, 652 (D.C. Cir. 2001), where deliberate
indifference might suffice to shock the conscience.  Rather, the heightened urgency means that

any claim against Lt. Ireland would have to establish a higher level of fault, such as intentional misconduct toward Ms. Fagre.  Nothing remotely like that appears in the complaint.  *See McCann v. York School Department*, No. 2:18-cv-336-JDL, 2019 WL 542284, at *9 (D. Me. Feb. 11, 2019) (dismissing claim that school district violated substantive due process by failing to act on harassment complaints where complaint did not allege the district "acted purposefully with an intent to injure [the student]").

Nor do the allegations against Lt. Ireland even show deliberate indifference.  To establish deliberate indifference, plaintiff must plead facts showing (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of the risk, and (3) his failure to take easily available measures to address the risk.  *Long v. Abbott*, No. 15-cv-00291-JAW, 2017 WL 829145, at *22 (D. Me. Mar. 1, 2017).  When Lt. Ireland encountered Ms. Fagre, she did not appear to be in any danger from Bailey.  According to the complaint, she referred to him as her "boyfriend" and explained she was waiting for him.  Compl. ¶ 20.  Thus, the grave risk that the complaint apparently accuses Lt. Ireland of ignoring is the risk that the situation might eventually deteriorate into a deadly confrontation between police and the absent boyfriend, to which Ms. Fagre would be close enough to be injured in the crossfire.  That claim is easy to make with the 20/20 vision of hindsight.  But such a risk could not plausibly have been so apparent to Lt. Ireland at the time he left Ms. Fagre as to make his conduct conscience-shocking.

In addition, the complaint acknowledges that Lt. Ireland *did* take steps to address the risk to Ms. Fagre.  Specifically, rather than leaving her alone, he asked another officer to stay with her.  Compl. ¶ 28.  Then, later, he allegedly radioed a warning to Chief Brown once he realized that Bailey might be headed back toward Ms. Fagre.  *Id.* ¶ 36.  Plaintiff's claim is thus not so much that Lt. Ireland failed to take steps to address the risk, but that, in hindsight, the steps he

took were not enough to prevent the eventual harm.  Of course, the alternative proposed by Plaintiff—removing Ms. Fagre from the scene—could have posed its own problems, such as making Ms. Fagre less available for questioning and reducing the number of officers and vehicles available to search for and apprehend the "armed and dangerous" Bailey.  Whether or not Lt. Ireland actually had these specific concerns—the complaint does not say—they reinforce the point that Plaintiff here is seeking to second-guess difficult decisions about the allocation of police resources in a tense and uncertain situation.  Absent some allegation allowing an inference of grave misconduct, those decisions, as a matter of law, cannot shock the conscience.

Finally, even if Lt. Ireland's decision to entrust Ms. Fagre to the protection of another officer could be said to "shock the conscience," Plaintiff's claim still fails because she does not allege facts establishing that Lt. Ireland was under any constitutional duty to protect Ms. Fagre.  The complaint pleads its substantive due process theory as a "failure to provide police protection" claim.  Compl., Ct. 3.  For a police officer to be liable under a "failure to protect" theory, he or she must commit "affirmative acts" that create or enhance a danger to the plaintiff.  *Rivera v. Rhode Island*, 402 F.3d 27, 37 (1st Cir. 2005); *see Soto v. Flores*, 103 F.3d 1056, 1064 (1st Cir. 1997) (courts considering state-created danger claim must distinguish between "state inaction and action").  The complaint here, with one irrelevant exception,[6] is devoid of such allegations.  It claims that Lt. Ireland "affirmatively acted" by "*failing* to remove [Ms. Fagre] from the Durango" and "*leaving [Ms. Fagre] alone* inside the Durango."  Compl. ¶ 91 (emphasis added).  "[F]ailing to" do something is not an affirmative act.  "[L]eaving [someone] alone" is not an affirmative act.  Ms. Fagre's presence at a crime scene was not Lt. Ireland's doing.  Lt.

---

[6]      The one actual affirmative act mentioned in the complaint is Lt. Ireland's shooting of Bailey.  Compl. ¶ 91.  But Ms. Fagre had already been fatally injured by that point.  Even if Lt. Ireland's shooting at Bailey created a danger to Ms. Fagre, that danger did not cause Ms. Fagre's injury.

Ireland was thus under no constitutional duty to protect Ms. Fagre at the time he made the decision to leave her with Sgt. Estes.

## III.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity bars § 1983 suits against public officials in their personal capacities unless their conduct is "plainly incompetent" or they "knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam).  There are two prongs to the qualified immunity analysis: (1) "whether the facts alleged . . . make out a violation of a constitutional right," and (2) "whether the right was 'clearly established' at the time of the defendants' alleged violation." *Id.*

To be clearly established, the contours of the right must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).  "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  That precedent, moreover, must be in the form of either "controlling authority" or "a robust 'consensus of cases of persuasive authority.'"  *al-Kidd*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). This authority must be "particularized" to the facts of the case and must make it "apparent" that the alleged conduct is unlawful.  *White v. Pauly*, 137 S. Ct. 548, 552 (2017).  The burden of demonstrating that the law is clearly established is on the plaintiff.  *McGrath v. Tavares*, 757 F.3d 20, 29 (1st Cir. 2014).

Defendants have already shown above that the facts alleged do not make out a violation of either the Fourth or the Fourteenth Amendments.  They are therefore entitled to qualified immunity for the same reasons the complaint fails to state a claim.  But even if the Court were to conclude that the allegations in the complaint were sufficient to state either a Fourth or Fourteenth Amendment claim, those claims would still fail because neither Lt. Ireland nor

Trooper Parks could be said to have been on fair notice from clearly established caselaw that their alleged actions violated Ms. Fagre's rights.

With regard to the Fourth Amendment claim, *Landol-Rivera* shows that the Fourth Amendment right posited by Plaintiff is not clearly established in this circuit.  Any reasonable officer in Trooper Parks's shoes reading *Landol-Rivera* would come away with the understanding that the Fourth Amendment did not prohibit him from shooting into the vehicle to stop Bailey merely because he "knew or should have known," Compl. ¶ 79, that Ms. Fagre was also inside.  Undersigned is aware of no First Circuit decision calling into question *Landol-Rivera*'s holding.  Moreover, the Supreme Court has recently recognized the First Circuit's position on the question.  *Plumhoff*, 572 U.S. at 778 n.4.  Under these circumstances, a reasonable officer in this circuit would not be on notice that he could violate a passenger's Fourth Amendment rights by using deadly force to stop a fleeing driver.  *See Carabajal*, 847 F.3d at 1213 (holding law on seizure of passengers not clearly established).

Moreover, even if Trooper Parks's action was a "seizure," it is still protected by qualified immunity.  The reasonableness standard is "comparatively generous to the police in cases where potential danger, emergency conditions or other exigent circumstances are present."  *Berube v. Conley*, 506 F.3d 79, 83 (1st Cir. 2007) (quoting *Roy v. Inhabitants of City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994)).  The calculus must allow for the fact that police officers are often forced to "make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id*. (quoting *Roy*, 42 F.3d at 695).  Plaintiff thus may not rely on the "20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.  Here, the complaint's own allegations establish a very dangerous situation.  *See* Part I.A, *supra*.  They also establish that Trooper Parks was well aware of the danger.  Compl.

¶¶ 52, 54, 57.  Under those exigent circumstances, an officer in Trooper Parks's shoes could reasonably conclude that Bailey posed an immediate threat of serious physical harm, both to Parks and to others. Indeed, the Supreme Court has recognized the applicability of qualified immunity to the use of deadly force in less dangerous circumstances.  *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (suspect attempting to flee in vehicle).

As for the "failure to provide police protection" claims, *County of Sacramento* makes clear both Trooper Parks and Lt. Ireland had broad leeway under the Fourteenth Amendment to act as they deemed appropriate in the urgent situations with which they were confronted, so long as they did not act with an improper or malicious motive.  523 U.S. at 855; *see* Part II, *supra*. Undersigned is aware of no decisions anywhere suggesting that the kind of allegations at issue here meet that very high threshold.  Thus, even if the complaint otherwise states due-process claims against Parks and Ireland, those claims would be barred by qualified immunity.

## IV.   PLAINTIFF'S STATE-LAW CLAIMS FAIL

### A.   The Maine Civil Rights Act Claim Cannot Survive Dismissal of the § 1983 Claims

Plaintiff invokes the Maine Civil Rights Act, 5 M.R.S. § 4682, to assert that Trooper Parks and Lt. Ireland also violated the prohibition on unreasonable seizures in article I, section 5 of the Maine Constitution.  Plaintiff's failure to state a § 1983 claim against the Defendants, and Defendants' qualified immunity for those claims, disposes of MCRA claims.  *See Jackson v. Town of Waldoboro*, 751 F. Supp. 2d 263, 275 (D. Me. 2010) ("disposition of a claim under Section 1983 controls a claim brought under the MCRA"); *see also Jenness v. Nickerson*, 637 A.2d 1152, 1159 (Me. 1994) (recognizing that qualified immunity applies to MCRA claims).

Bolstering this conclusion is the wording of the MCRA itself.  Unlike 42 U.S.C. § 1983, the MCRA applies only to an actor who "*intentionally* interferes or attempts to *intentionally* interfere by physical force or violate against a person…."  5 M.R.S. § 4682 (emphasis added).

As already discussed, Trooper Parks is not alleged to have "intentionally" done anything to Ms. Fagre. Rather, he injured Ms. Fagre in his attempt to stop Bailey. Thus, the MCRA claim is doubly barred by Trooper Parks's lack of intent.

### B.   Plaintiff's Negligence Claims are Barred by Immunity and Otherwise Fail

Because Lt. Ireland and Trooper Parks are governmental employees, Plaintiff's negligence claim is governed by the Maine Tort Claims Act.[7] 14 M.R.S. § 8111. They are thus "absolutely immune" from liability for "performing or failing to perform any discretionary function or duty, whether or not the discretion is abused." *Id.* § 8111(1)(C). A law enforcement officer's use of force is a discretionary function. *Jackson*, 751 F. Supp. 2d at 276. Trooper Parks or Lt. Ireland could thus be liable for negligence only if their alleged conduct "so clearly exceeds the scope of [their] authority that [they] cannot have been acting in [their] official capacity." *Hilderbrand v. Washington County Comm'rs*, 2011 ME 132, ¶ 9, 33 A.3d 425.

Here, the complaint does not allege that Trooper Parks intentionally directed any force at Ms. Fagre. Rather, his shooting of Ms. Fagre was an unintended effect of his attempt to stop Bailey. Thus, as long as his decision to use force against *Bailey* did not clearly exceed the scope of his authority, he is immune from any allegation he negligently harmed Ms. Fagre. *See Norton v. Hall*, 2003 ME 118, ¶ 9, 834 A.2d 928 (holding that since officer's decision to treat call as an emergency was discretionary, he was immune for causing a fatal crash while driving to scene).

The facts alleged in the complaint do not allow an inference that Trooper Parks clearly lacked such authority. As established in Part I.A, *supra*, the complaint's allegations show that Trooper Parks had probable cause to believe Bailey posed a threat of serious physical harm to

---

[7]     Plaintiff's claims for "wrongful death" and "conscious pain and suffering" are not separate causes of action. Rather, they are "a means for a claim by a decedent's personal representative, either for the death itself or suffering prior to death." *Jackson*, 751 F. Supp. 2d at 276 n.13.

both Parks and others.  For the same reasons, the allegations show that Parks was justified in using force under the similar state-law standard.  *See* 17-A M.R.S. § 107(2).  Moreover, even if there were any doubt—and there is not—that deadly force was legally justified, the alleged facts still would not allow the inference that Parks's decision to use force against Bailey was not just mistaken, but "so egregious as to clearly exceed any discretion the officer[] could have possessed under the circumstances."  *Conlogue v. Hamilton*, No. 1:16-cv-296-GZS, 2017 WL 5339895, *12 (D. Me. Nov. 13, 2017) (quoting *Jackson*, 751 F. Supp. 2d at 276).

Nor can it plausibly be said that Lt. Ireland clearly exceeded the scope of his authority when he made the decision to leave Ms. Fagre with Sgt. Estes.  Decisions about how to allocate resources in a tense and uncertain situation are core discretionary functions of a police officer.  It is not clear that even a conscience-shocking decision in this context could breach officers' absolute immunity for such decisions.  But certainly here, where no conscience shocking behavior is plausibly alleged, *see* Part II.B, *supra*, Lt. Ireland's conduct is protected by immunity.  *See Parker v. Dall-Leighton*, 2:17-cv-216-GZS, 2017 WL 6210892, *7 (D. Me. Dec. 8, 2017) (dismissing tort claims under the MTCA where plaintiff failed to plead allegations establishing deliberate-indifference constitutional claim).

Plaintiff's negligence claim against Lt. Ireland is also barred by the MTCA's intentional-act immunity.  14 M.R.S. § 8111(1)(E).  His decision to leave Ms. Fagre to investigate Bailey was an intentional act.  Under the MTCA, he is immune for such intentional decisions unless he can be shown to have acted in bad faith.  *Id.*; *see also* Brown Mot. to Dismiss at 19.  There are no allegations in the complaint allowing such an inference.

Finally, the negligence claim against Lt. Ireland fails because it does not allege facts showing that Lt. Ireland had any legal duty to protect Ms. Fagre at the time he made the decision

to leave her with Sgt. Estes.  "Ordinarily, individuals have no duty to protect others from the criminal conduct of a third party."  *Gniadek v. Camp Sunshine at Sebago Lake, Inc.*, 2011 ME 11, ¶ 17, 11 A.3d 308.  For such a duty to accrue, plaintiff must show either a "special relationship" or that the harm was "created by the actor."  *Id.*  Neither of these exceptions apply here.  Lt. Ireland had no special relationship with Ms. Fagre, such as a fiduciary or custodial relationship.  Indeed, Plaintiff's legal theory is predicated on a *failure* to take Ms. Fagre into custody.  Nor is Lt. Ireland alleged to have taken an "affirmative act" to "create[] or expose[] the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account."[8]  *Id.* (quoting Restatement (Second) of Torts § 302B).  The only such "affirmative act" by Lt. Ireland mentioned in the complaint—shooting Bailey—occurred after Ms. Fagre's injury, and thus could not have caused it.

## Conclusion

For the above reasons, all claims against Trooper Parks and Lt. Ireland should be dismissed.

Dated: March 1, 2019
<br>
AARON M. FREY
Attorney General

/s/ Jonathan R. Bolton
JONATHAN R. BOLTON
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel. (207) 626-8800
jonathan.bolton@maine.gov

*Attorney for Defendants Scott W. Ireland and Jeffrey Parks*

---

[8]      In this respect, the facts here are distinguishable from *Moore v. City of Lewiston*, 596 A.2d 612, 614 (Me. 1991), in which the Law Court stated in dicta that, absent MTCA immunity, an officer might have had a duty to give a ride to the passenger of a driver the officer had arrested.

## CERTIFICATE OF SERVICE

I certify that on March 1, 2019, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to counsel for all parties to this action.

/s/ Jonathan R. Bolton
_____

Jonathan R. Bolton
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel. (207) 626-8800
jonathan.bolton@maine.gov